Hillsborough, }
June 4, 1929. }

JOSEPH S. RUSSO *v.* ABRAHAM B. SLAWSBY *& a.*

*James M. Graham* (of Massachusetts) and *Thomas J. Leonard* (*Mr. Graham* orally), for the plaintiff.

*Doyle & Doyle, Winthrop Wadleigh* and *Robert W. Upton* (*Mr. Wadleigh* orally), for the defendants.

PEASLEE, C. J. The case requires a determination of the conditions and terms which the law affixes to a general contract employing a broker to sell real property. By some authorities it is stated that he must produce a customer ready, able and willing to perform the contract offered by the seller. This statement is to be found in many cases, in more than a score of different jurisdictions. But in none of them is there any consideration of what the several adjectives signify. In but two is there any reference to the topic, and these merely contain the assertion that "Each of the words, 'ready, willing and able,' expresses an idea that the others do not convey." *Phillips* v. *Rudy*, 146 Ky. 780, 784; *Gaston* v. *Warner*, 272 Fed. Rep. 56, 63.

In other cases it is stated that if the customer is able and willing it is sufficient. *Feist* v. *Jerolamon*, 81 N. J. Law 437; *Crawford* v. *Cicotte*, 186 Mich. 269. In one jurisdiction the matter has been phrased as "willing and prepared." *Miller* v. *Haddock*, 109 Me. 98. This has there been treated as the equivalent for ready, able, and willing. *Hartford* v. *McGillicuddy*, 103 Me. 224. In Connecticut the use of the term ready does not appear to be considered any addition to able and willing. Compare *Abbott* v. *Lee*, 86 Conn. 392, with *Bronk* v. *Company*, 89 Conn. 134. The same is true of New York. *Wittwer* v. *Hurwitz*, 216 N. Y. 259.

It is nowhere suggested that these different statements are designed to vary the rule as to the broker's obligation. They all seek to describe a situation where he "has found a customer for that for which his principal has employed him to find a customer." *Fitzpatrick* v. *Gilson*, 176 Mass. 477.

Those who insist that the requirement of readiness be stated, rely upon the argument that a purchaser with frozen assets might be both able and willing to pay, and yet not be ready with present cash. Advocates of the briefer statement reply that such a party is not able to perform the agreement, although he might produce the money at a later date; and that therefore the use of the word ready is superfluous. The latter contention appears to be based upon the better reasons, and the rule has always been stated in accordance therewith

in this jurisdiction. *Parker* v. *Estabrook*, 68 N. H. 349; *Morrison* v. *Hall*, 78 N. H. 48. "His undertaking was to produce a customer able and willing to buy." *Wilson* v. *Atwood*, 81 N. H. 61, 65.

It is also argued on behalf of the defendants that the duty of the agent is such that he must procure the execution of an enforceable contract of sale. However it may be in case the maker of an oral promise to buy thereafter refuses to execute a written memorandum, the authorities generally hold that if the failure to carry out the oral agreement arises from some cause other than default of the buyer, the agent has fully performed his contract and may recover his commission. "The fundamental doctrine is that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale and the price and terms upon which it is to be made." *Parker* v. *Estabrook*, *supra*, 350.

Applying these rules, the motion for a nonsuit was properly denied. The negotiations were between the plaintiff, Brown the prospective purchaser, and A. B. Slawsby, who is herein spoken of as the defendant.

The alleged contract was to pay forty thousand dollars in cash and two hundred thousand dollars in notes secured by mortgages, and that the defendant would undertake to negotiate a first mortgage and take a second one himself. The contention that there was no evidence of such an undertaking by the defendant, cannot prevail. While the evidence was conflicting, there was enough in it to sustain the claim above set forth.

Inability to procure the proposed mortgage loan would not be a defence to the plaintiff's claim, if the existence of the defendant's agreement to procure the loan was proved. But the making of such a contract was denied by the defendant and was an important issue in the case. His knowledge that such a loan could not be procured was evidence upon this issue. When the question is whether a certain act was done, evidence of a motive for doing or not doing it should be received.

"One is perhaps apt to think of 'motive' as a matter involved in criminal cases only. But a recollection of the process involved — that of inferring the existence of some emotion, from which in turn the doing of an act is to be inferred — shows that this process may be equally a feature of proof in civil cases, though not as frequently as in criminal cases." 1 Wig., Ev., s. 389.

The plaintiff's proposition was that the defendant (apparently a man of financial responsibility) undertook to secure a certain loan. To substantiate his denial of making the promise, the defendant of-

fered to show that he knew that such a loan could not be procured. This evidence, if believed, would show the existence of a strong motive to refrain from making the promise. Men do not usually thus lay themselves open to suits for damages caused by a failure to perform their agreements. Such evidence is received because it is "in conformity to the common experience, that men of ordinary prudence consult their own interest and use reasonable care in securing and preserving their own property." It "was a circumstance which, though by no means conclusive, yet had an important bearing upon the question at issue." *Marcy* v. *Barnes*, 16 Gray 161, 162.

The principle is that there is an interest which creates a motive, and that the motive in turn probably induces action. It has frequently been applied in cases where there is a dispute concerning to whom credit was given. In such instances the plaintiff may show the known irresponsibility of the party he denies having trusted. *Lee* v. *Wheeler*, 11 Gray 236; *Buswell &c. Co.* v. *Case*, 144 Mass. 350; *Plumb* v. *Curtis*, 66 Conn. 154; *Cochrane* v. *Company*, 64 Minn. 369. The principle has been recognized in this jurisdiction. When there is a dispute as to an agreed price, value may be shown, as tending to support the contention of one party or the other. *Swain* v. *Cheney*, 41 N. H. 232; *Moore* v. *Davis*, 49 N. H. 45.

While the excluded question did not call for the defendant's knowledge at the time the negotiations were in progress, it is apparent that the object in view was to prove such knowledge. It was the first step in that direction, and as such it should have been admitted.

It might be urged that, as the evidence was merely circumstantial, it may have been excluded as too remote. The record does not state the ground of exclusion. In this situation the ruling is to be sustained, if sustainable upon any ground. *Cross* v. *Company*, 79 N. H. 116, 120, and cases cited. The question of remoteness is therefore to be considered.

"Upon the exclusion of evidence (not facts in the case) there is a reviewable question of law: Could a reasonable person deem this evidence too remote to be useful?" *Bunten* v. *Davis*, 82 N. H. 304, 310. It seems to us that this could not be done in the present instance. Objections to remoteness of time or space (3 Chamberlayne, Ev., s. 1746) are wholly unavailable. The evidence had no tendency to create unfair prejudice; and if it was false, the fact could easily have been shown. Its persuasive value is apparent. Under these circumstances it could not be found to be so remote as not to be useful. *Daley* v. *Insurance Co.*, 81 N. H. 502.

The exceptions to the charge are largely disposed of by what has already been said. The argument that the instructions took from the jury the right to find for the defendant if it was the plaintiff's fault that the oral bargain was not consummated, attempts to raise an issue which was not presented at the trial. The defendant's position throughout the trial was that he never agreed to take less than two hundred and fifty thousand dollars, and that there never was any agreement of the parties. This was the issue tried. Default by the purchaser was not suggested.

Moreover, this objection to the charge was not presented to the presiding justice. The question raised was whether an oral bargain was enough, or whether there must be an enforceable contract. The reason for this is plain. As the case was tried, any suggestion of default by the purchaser would have been a flat repudiation of the defence relied upon.

Because of the exclusion of the evidence relating to the bank loan, the verdict must be set aside.

*New trial.*

All concurred.